**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**

| | |
|---|---|
| THE DELOACH GROUP, INC. d/b/a, Quastar Computer International<br><br>Plaintiff,<br><br>vs.<br><br>ASHFORD FINANCE LLC, NOUSHIR HASAN,CARREFOUR INFORMATIQUE TREMBLANT, INC, CORPORATE FUNDING PARTNERS, LLC, GANGES EXPORTS USA, MIKE TONES, AMIN HAQ, BEEM KHEMANEY, AND JOHN DOES I THROUGH IV<br><br>Defendants. | CASE NO.<br>1:11-CV-1678-JOF |

**FIRST AMENDED COMPLAINT**

COMES NOW THE DELOACH GROUP, INC d/b/a Quastar Computer International (hereinafter referred to as "Quastar"), and pursuant to F.R.C.P. 15(a)(1)(B)and files this Amended Complaint within 21 days from when Defendant Corporate Funding Partners, LLC and replaces the original complaint in its entirety other than incorporating the Exhibits they were set forth in its original Complaint as if fully set forth herein, showing the Court as follows:

1.

Defendant Ashford Finance Company LLC ("Ashford Finance") is a Delaware company with its principal place of business in

New York, New York and may be personally served with process through its registered agent Noushir Hasan at 50 Broadway 33rd floor, New York, New York 10004.

2.

Defendant Nourshir Hasan ("Hasan") is a resident of the State of New York and may be served at 530 E 9th St., New York New York, 10128. Mr. Hasan is, upon information and belief, a senior level employee of Ashford Finance.

3.

Defendant Corporate Funding Partners, LLC ("Corporate Funding") is a New York company that does or had its principal place of business at 250 West 57th Street, Suite 1414, New York, New York, 10023.

4.

Defendant Carrefour Informatique Tremblant, Inc. ("Carrerfour") is purported to be or was a Quebec company that had its principal place of business at 460 Montee Kavanagh, Mont Tremblant, Quebec J8E2P2 and can also be served through its Secretary, Mr. Prom Sokhonna, at 11-11825 rue Ranger Montreal (Quebec) H4J2K7 Canada. In addition, Carrefour is an alter ego entity of Corporate Funding.

5.

Defendant Ganges Exports USA ("Ganges") purports to be a company that had its principal place of business at 292 Fifth Avenue, Suite 200, New York, NY 10001, although upon information and belief, Ganges is not and has never been a valid entity as the New York Secretary of State's office has no records of the Ganges ever being an entity within or doing business in the State of New York.

6.

Defendant Mike Tones ("Tones") purportedly is or was an employee of Corporate Funding Partners, LLC and Carrefour, and to have corporate authority and responsibility with both companies, and is believed to be a resident of Quebec Canada.

7.

Defendant Amin Haq ("Haq") purportedly is or was an employee of the fictional entity Ganges Exports USA and is believed to be a resident of New York.

8.

Defendant Beem Khemaney ("Khemaney") purportedly is or was an employee of the fictional entity Ganges Exports USA and is believed to be a resident of Hong Kong.

9.

Defendants John Does I through IV are yet to be named defendants in this action.

10.

Plaintiff Quastar is a Georgia company with it principal place of business at 5910 Shiloh Road East, Ste. 101 Alpharetta, Georgia 30005 in Forsyth County and is in the business of selling computer equipment.

11.

This Court has jurisdiction over this matter, as well as over the Defendants pursuant to O.C.G.A § 9-10-91, *and*, venue is proper herein.

12.

In or around February 2009, Defendants Carrefour and Tones approached Quastar to purchase various computer equipment from Quastar (the "First Carrefour Approach"). On February 27, 2009, Mr. Prom Sokhonna completed a Quastar Computer Account Application on behalf of Carrefour.  Upon information and belief, Mr. Sokhonna is or has been an employee and agent of both Corporate Funding and Ashford Finance.

13.

After completion of a credit application and a review by Quastar, Quastar communicated to Carrefour and Tones that Carrefour would have to pay in advance or provide a letter of credit for the requested computer equipment.

14.

Rather than paying in advance or providing a letter of credit, Carrefour and Tones did not purchase the equipment from Quastar in March of 2009. Instead, Carrefour and Tones ceased contacting Quastar about the transaction for several months.

15.

In or around July 2009, Tones and Carrefour again approached Quastar about purchasing various computer equipment (the "Second Carrefour Approach"). At this time, Carrefour and Tones stated that they had secured a commitment for a letter of credit from First American Bank in Illinois for substantially the entire purchase price of the computer equipment. At that time, Carrefour and Tones stated that they would procure the letter of credit with the assistance of its partners and related companies, Ashford Finance and Corporate Funding.

16.

On July 22, 2009, the CEO of Quastar, Mr. Jeff DeLoach in Georgia, received an email from Carrefour which attached a

letter of credit application for a $336,636 letter of credit with First American Bank of Illinois. The applicant on the application was Carrefour listing its address at 460 Montee Kavanagh, Mont Tremblant, Quebec J8E2P2. The application also listed the documents necessary for the draw of the letter of credit.  In this listing of necessary documentation, it detailed that Corporate Funding and Ashford Finance were also parties in the transaction. The application indicated that the truck bills of lading were consigned to Corporate Funding and listed Corporate Funding's address **at the same address of Carrefour:** 460 Montee Kavanagh, Mont Tremblant, Quebec J8E2P2. Furthermore, the letter of credit application stated that the "Original Shipping Compliance Certificate signed and issued by an authorized officer of Ashford Finance" was a necessary document to draw on the letter of credit.

17.

On July 28, 2009, Mr. Jeff DeLoach in Georgia sought clarification on the precise role of Ashford Finance and Corporate Funding and sent Carrefour an email with the subject line "one more clarification question".  On the same date, July 28, 2009, Mr. Tones through his assistant Sophie, emailed Mr. DeLoach in Georgia with a response saying, "Dear Jeff: Corporate Funding Partners is Carrefour Informatique Tremblant Inc".  With regard to Ashford Finance, Mr. Tones stated through his

assistant that "All Ashford does is authenticate the proof of
deliverys (sic). . . all Ashford does is to make sure no false
documentation is provided that goods were shipped when, in fact,
no goods or inferior goods were shipped." This statement by Mr.
Tones/Carrefour/Corporate Funding concerning Ashford Finance's
role was a fraudulent misrepresentation as, it is shown later in
this Complaint, Ashford Finance now contends that verification
of the shipment was not its sole role in the transaction.
Ashford Finance now contends that the Shipping Compliance
Certificate was at the complete discretion of Ashford Finance to
give conditioned upon its satisfaction of Carrefour's
"financing".

18.

On July 30, 2009, Mr. Jeff DeLoach sought to confirm what
Carrefour had communicated to him with both Ashford Finance and
Corporate Funding. Mr. Hasan called Mr. DeLoach in Georgia on
the same day, July 30, and confirmed that Ashford Finance's role
was to verify shipment as Mr. Tones had communicated. With
regard to the shipment, Mr. Hasan stated that the Shipping
Compliance Certificate would be provided to Quastar in Georgia
once it was verified that the goods that were ordered were
indeed shipped. Mr. Hasan did not tell Mr. DeLoach that the
Shipping Compliance Certificate was also subject to Ashford
Finance's discretion about "financing" or any other condition.

This statement by Mr. Hasan/Ashford Finance concerning Ashford Finance's role was a fraudulent misrepresentation as, it is shown later in this Complaint, Ashford Finance now contends that verification of the shipment was not its sole role in the transaction.  Ashford Finance now contends that the Shipping Compliance Certificate was at the complete discretion of Ashford Finance to give conditioned upon its satisfaction of Carrefour's "funding".

19.

Also, on July 30, 2009, Mr. Jeff DeLoach in Georgia called First American Bank of Illinois to confirm Mr. Tones' communication of July 28, 2009.  Mr. DeLoach spoke with Ms. Patti Marshall, a banking officer, who confirmed that Carrefour/Corporate Funding Partners had applied for a letter of credit wherein Ashford Finance would verify the shipment and provide the Shipping Compliance Certificate.

20.

In addition, due to Mr. DeLoach's inquiry on July 22, 2009, Carrefour arranged for Mr. Simon Asseraf, another senior offical of Corporate Funding, to contact Mr. DeLoach to confirm the parties and their roles. On July 31, 2009, Mr. Asseraf called Mr. DeLoach in Georgia in order to confirm Corporate Funding's role in the transaction.  Mr. Asseraf confirmed that Corporate Funding was Carrefour. Since Mr. DeLoach believed he was

- 8 -

speaking with the purchasing entity, Mr. DeLoach discussed altering the business details of the transaction with Mr. Asseraf.  Mr. DeLoach told Mr. Asseraf he wanted to separate the purchase into four or five smaller purchases and deliveries, instead of one large order for over $330,000, in order to mitigate Quastar's risk. Apparently sensing Mr. DeLoach's reluctance, Mr. Asseraf then suggested that the transaction could be separated into 3 different deliveries and letters of credit; however, Mr. Asseraf requested that the initial delivery would be the largest delivery. Mr. Asseraf then confirmed that Corporate Funding would be taking possession of the computer equipment once delivered to the Quebec address. Since Carrefour and Corporate Funding were intending to prevent Quastar from drawing on the letter of credit and not paying for the computer equipment, Carrefour and Corporate Funding fraudulently negotiated a larger shipment at the beginning of the transaction knowing there would not be subsequent transactions with Quastar.

21.

On September 9, 2009, and in accordance to the structure that Mr. Asseraf established, a letter of credit was issued by First American Bank in the amount of $190,834 listing Quastar as the beneficiary and Ganges as the applicant. The letter of credit had an expiry date of December 9, 2009. (hereinafter the "Letter of Credit"; see Letter of Credit attached as Exhibit

"A"). This was the first time that Ganges was identified as a party in the transaction.

22.

On September 17, 2009, Mr. DeLoach in Georgia called Ms. Patti Marshall of First American Bank of Illinois to confirm the validity of the letter of credit. Ms. Marshall confirmed the letter of credit and all of the parties involved. Mr. DeLoach also asked Ms. Marshall to confirm with Ashford Finance the terms of the letter of credit.  Mr. DeLoach in Georgia called Ms. Marshall on September 18, 2009 to confirm whether she had spoken with Mr. Hasan about the letter of credit.  Ms. Marshall indicated that she had spoken to Mr. Hasan and that everything was "ok" on the letter of credit.

23.

On September 18, 2009, Mr. DeLoach in Georgia sought to confirm the role of Ganges Exports USA in the transaction and emailed Mr. Tones if he wanted to ship the computer equipment to that name. On the same date, Mr. Tones emailed to Mr. DeLoach in Georiga the the bill of lading should be addressed to Ganges Exports, USA c/o Carrefour at 460 Montee Kavanagh, Mont Tremblant, Quebec J8E2P2. Mr. Tones communicated that Ganges Exports USA ("Ganges") was merely the "export agent" for Ashford Finance in the transaction. This statement by Mr. Tones was false as Carrefour/Corporate Funding were fraudulently inserting

a non-existent entity in an attempt to remove Corporate Funding's name in the transaction. Ganges was a non-existent entity and inserted in the transaction for the sole purpose of defrauding Quastar.

24.

On or around September 23, 2009, Mr. DeLoach received a telephone call on his cell phone in Georgia from someone identifying himself as "Ramesh" who was located in Singapore and that he worked for Ashford. Ramesh advised Mr. DeLoach not to ship the computer equipment as there were "funding issues."  On the same day, Mr. DeLoach called Mike Tones and advised him he would not ship the computer equipment based on his phone call with Ramesh. In addition, Mr. DeLoach in Georgia called Mr. Nosh Hasan of Ashford Finance to inquire about the validity of Ramesh's telephone call. Mr. Hasan told Mr. DeLoach in Georgia that there was no such person as "Ramesh" working for Ashford Finance and that he was unaware of any problems with the letter of credit and furthermore did not instruct Mr. DeLoach not to ship the computer equipment.  Mr. Hasan's statements and assurances to Mr. DeLoach are fraudulent under Ashford Finance's own defense of Quastar's claim.  After Quastar shipped the equipment, Ashford Finance now contends that it told Quastar not to ship the equipment and should have heeded "Ramesh" despite

Mr. Hasan's contrary statements to Mr. DeLoach on September 23, 2009.

25.

Carrefour sent an email on September 23, 2009 to Mr. DeLoach in Georgia pleading Quastar to ship the computer equipment and stating, "Ashford would no way put their name on a document if due diligence had not been done . . . [First American Bank] would not issue an LC unless they had done their due diligence . . . [Mr. DeLoach] what can be done to salvage the situation?" Mr. DeLoach informed Carrefour that he would not ship the computer equipment unless he could be assured that there were no problems with the letter of credit. In a subsequent telephone call that day, Carrefour promised to have Ashford and Ganges call him.

26.

Mr. DeLoach in Georgia, called and left messages for Mr. Nosh Hasan between October 15th through the 20th, and on October 20, 2009, Mr. Hasan called Mr. DeLoach in Georgia. Mr. Hasan told Mr. DeLoach that "everything was getting squared away" on the letter of credit and that he would have Carrefour contact Mr. DeLoach shortly. Mr. Hasan's assurance was fraudulent as Ashford Finance did not have any intention to send the Shipping Compliance Certificate and was going to prevent Quastar from drawing on the letter of credit.  Mr. Hasan's fraudulent

assurance was solely meant to entice Quastar to ship the computer equipment that Ashford Finance knew would never be paid for.

27.

On October 26, 2009, Mike Tones through his assistant Sophie of Carrefour emailed Mr. DeLoach in Georgia to further assure Mr. DeLoach to ship by explaining Ganges Exports, "Ganges Exports USA who is guarantying the full payment by full to Ashford Finance. Carrefour has guaranteed the payment to Ganges. That is why Ashford is comfortable with Ganges Exports USA as they have been doing business for quite some time." In addition, Carrefour introduced Mr. DeLoach to a Mr. Amin Haq, whom Carrefour represented as the head of Ganges. In another email to Mr. DeLoach in Georgia on October 27, 2009, Mike Tones through his assistant Sophie of Carrefour stated, "The relationship between Ashford and Ganges Exports USA is privy to me.  I have asked that someone contact you again to clear up this matter.  I do know that Ashford and Ganges Exports USA have been working together for quite some time. [First American Bank] would not issue a naked LC just on the advice of one company unless they had great experience with that company. But their relationships are privy between themselves.  I highly doubt a Bank would issue an LC if there was no prior experience with these companies . . . I have requested that someone call you immediately to clear up

any issues." Carrefour/Corporate Funding's statements were fraudulent and meant to entice Quastar to ship the goods. Ganges was a non-existent entity that was being substituted in the transaction by Corporate Funding in an attempt to remove Corporate Funding's name from the transaction, in light of the disputes that Corporate Funding, Ashford Finance and Carrefour were having in Florida, Kentucky and California. In addition, Carrefour/Corporate Funding's insertion of Ganges into the transaction was meant to fraudulently cause a discrepancy with the letter of credit so that the name on the invoice would not match with the name of the applicant on the letter of credit, and would later be cited by Ashford Finance as a reason not to provide the Shipping Compliance Certificate.

28.

On October 28, 2009, a man identifying himself as Amin Haq called Mr. DeLoach in Georgia. Mr. Haq identified himself as working with Ganges and that Ganges "worked with" Ashford.  Mr. Haq confirmed by telephone to Mr. DeLoach that all of the conditions of the letter of credit had been fulfilled.  Mr. Haq also reiterated this to Mr. DeLoach by email on that same date. On October 28, 2009,Mr. DeLoach also called Ms. Patti Marshall at First American Bank to confirm whether the letter of credit was still valid, and Mr. Marshall confirmed that the letter of credit was still in place and valid. Mr. Haq's representations

to Mr. DeLoach and Quastar were fraudulent as Ashford Finance would later contend that all of the conditions of the letter of credit have not been fulfilled, namely, Ashford Finance's contention that it had discretion to provide the Shipping Compliance Certificate based on Carrefour's "funding". In addition, Carrefour/Corporate Funding fraudulently presented Mr. Haq to Quastar in order to entice Quastar to ship the computer equipment. As Ganges and Ashford Finance would later contend, there was no "Amin Haq" of Ganges.

29.

On October 31, 2009, based on the Letter of Credit and the fraudulent assurances of Carrefour, Tones, Ashford Finance, Hasan, Corporate Funding, Haq and Ganges, that are detailed in the paragraphs above, Quastar shipped, and the aforementioned Defendants caused to be shipped through their fraudulent misrepresentations, the computer equipment totaling $215,978 to Carrefour. (See invoice attached as Exhibit "B").

30.

After shipment of the computer equipment, Quastar supplied Ashford Finance and Ganges with a bill of lading and proof of delivery showing that the computer equipment had been indeed delivered to Carrefour. However, both Ashford Finance and Ganges failed to supply the Shipping Compliance Certificate despite receiving the requisite documentation.

31.

After shipment of the computer equipment, Mr. DeLoach made repeated attempts to contact Carrefour, Ganges, Ashford Finance, Corporate Funding, Mr. Hasan, Mr. Asseraf. No one would return his telephone calls.

32.

After these repeated attempts, Mr. DeLoach received his first response from any of the parties through an email from a Beem Khemaney who purported to represent Ganges. In an email to Mr. DeLoach in Georgia dated November 18, 2009, Mr. Khemaney stated, "after much investigation, It seems to me that there is certainly some misrepresentation made to you by a certain Amin Haq . . . We do not know who this person is- he is not an authorised person of Ganges, nor have we had any dealings with."

33.

In addition, Quastar made repeated attempts to contact Ashford Finance concerning the Shipping Compliance Certificate, including in writing. Ashford Finance refused to communicate with Mr. DeLoach.

34.

On December 11, 2009, First American Bank confirmed that Quastar had not supplied the Shipping Compliance Certificate and instructed Quastar to "contact Ashford Finance LLC directly to

determine what conditions must be satisified for issuance of the document". Furthermore, First American Bank identified that it refused to honor the Letter of Credit because, *inter alia*, the shipping compliance certificate was not presented and because Ganges was the applicant of the Letter of Credit rather than Carrefour. The other discrepancies listed by First American Bank were discrepancies that were either minor and administrative or incapable of resolution due to the fraudulent actions of the Defendants.

35.

Finally, on December 14, 2009, five days after the expiration of the Letter of Credit, counsel for Ashford Finance and Defendant Hasan communicated to Quastar that Quastar should not have shipped the goods because "Ashford Finance instructed Quastar not to ship the goods since there were questions about the transaction." Furthermore, Ashford Finance believed that "illegal and fraudulent actions may have occurred". In addition, Ashford Finance's counsel in the aforementioned letter indicated that the Shipping Compliance Certificate was in its discretion to grant and Ashford did not give its discretion because Ashford Finance had "questions about the transaction". In this letter, Counsel for Ashford Finance also, for the first time and after the repeated assurances from Mr. Hasan about Carrefour and its role in the transaction, that "Quastar's invoice was sent to

Carrefour, not Ganges.  This indicates that Quastar expected payment directly from Carrefour."

36.

In fact, Ashford Finance never instructed Quastar to not ship the computer equipment to Carrefour, except for the alleged "Ramesh" who was purported to be an employee of Ashford Finance and whom was specifically denied and contradicted by Mr. Hasan.

37.

Ashford Finance's contention regarding the purposes and terms of the Shipping Compliance Certificate also demonstrate fraudulent misrepresentations as prior to the shipment of the computer equipment, Ashford Finance represented that the supply of the certificate was merely meant to satisfy verification of the shipment.  After Quastar shipped the goods, Ashford Finance now contends that it was within its discretion to send Quastar the Shipping Compliance Certificate and that it could withhold the certificate if it had "questions about the transaction." This material condition was never disclosed to Quastar until after Quastar had shipped, and all of Ashford Finance's statements before the equipment was shipped were directly contrary to this condition.

38.

At no time before Quastar shipped the computer equipment to Carrefour did defendants Ashford Finance, Ganges, Carrefour,

Tones, Hasan or Haq indicate that the Shipping Compliance Certificate was a financing condition under the complete discretion of Ashford Finance. Indeed, Quastar would have never shipped the computer equipment to Carrefour if the Defendants had communicated to Quastar that the Letter of Credit was conditioned upon the complete discretion of Ashford Finance to produce a shipping compliance certificate that was based on whether Ashford Finance had "concerns" over the transaction.

39.

Ashford Finance and Ganges continued to refuse to provide the Shipping Compliance Certificate even though they had conclusive evidence of the shipment to Carrefour and thus fraudulently causing the expiration of the Letter of Credit on December 9, 2010 without payment to Quastar. Quastar has not been paid for the computer equipment nor has any computer equipment been returned to Quastar.

40.

In December 2010, Quastar became aware of Dependable Component Supply, Inc. v. Carrefour Informatique Tremblant, Inc., LC.Com, Ltd d/b/a Corporate Funding Partners, Ashford Finance LLC, and First American Bank of Illinois that was filed on July 12, 2010 in the Circuit Court of Broward County in Florida and subsequently removed to the United States District Court in the Southern District of Florida, Ft. Lauderdale

Division (Case Number 10-61519-Civ-COOKE/BANDSTRA) (hereinafter "Dependable Case"; complaint attached hereto as Exhibit "C").

41.

In the Dependable Case, the plaintiff has alleged virtually the same set of operative facts that Quastar alleges herein, namely that Ashford Finance and the defendants in that case misrepresented to the plaintiff that it would receive the necessary Shipping Compliance Certificate once the plaintiff in the Dependable Case had provided evidence of shipment to Ashford Finance.  Instead, according to the complaint, after the shipment of the computer equipment based on those misrepresentations, Ashford Finance and the defendants fraudulently contended that the aforementioned condition in the letter of credit in Dependable was a financing condition to be unilaterally decided by Ashford Finance.

42.

The bank that issued the letter of credit in the Dependable Case was also First American Bank of Illinois, and the First American banking officer "orchestrating" the letter of credit in the Dependable Case was Ms. Patti Marshall, Senior Vice President, who was also the First American banking officer involved in the Letter of Credit in the instant case.

43.

The facts at issue in the Dependable case occurred between May and August of 2009. In the Dependable Case, the plaintiff alleges that the defendants collaborated together to induce the plaintiff to rely on the letter of credit to ship computer parts to Carrefour, never intending for the letter of credit to be paid, knowing it would be dishonored and causing the dishonor. Indeed, Dependable confirms that Mr. Tones is an employee of both Carrefour and Corporate Funding. ¶15 of the Dependable Complaint.  The Dependable Case plaintiff has sued Ashford Finance and the other defendants for wrongful dishonor of letter of credit, fraud and goods sold. Upon information and belief, the Dependable case has been dismissed without prejudice, and Dependable may re-file its Complaint.

### Fraud Against All Defendants

44.

Quastar incorporates by reference the allegations set forth in Paragraphs 1-43 as if fully set forth *verbatim*, herein.

45.

The Defendants enticed Quastar to ship $215,978 worth of computer equipment through fraudulent misrepresentations

concerning the Letter of Credit and the conditions that would cause the funding of the Letter of Credit to Quastar.

46.

The Defendants fraudulently inserted Ganges as a third party into the transaction, using misrepresentations about the funding conditions of the Letter of Credit.

47.

The Defendants collaborated together to induce Quastar to rely on the Letter of Credit to ship computer equipment to Carrefour, never intending for the Letter of Credit to be paid, knowing it would be dishonored and causing the dishonor. Furthermore, Quastar would have never shipped the computer equipment to Carrefour unless it would have received the funds through the Letter of Credit.

48.

Defendant Corporate Funding is vicariously liable for any the acts, including fraudulent misrepresentations, of Carrefour because Carrefour is the alter ego of Corporate Funding.

49.

Specifically, the fraudulent misrepresentations by each defendant and the specific paragraph in the Complaint that details the misrepresentations of each Defendant:

(a)   Carrefour: ¶¶ 17, 23, 25 and 27;

(b)   Ashford Finance: ¶¶ 18, 24 and 26;

(c)   Corporate Funding: ¶¶ 17, 20, 23, 25 and 27;

(d)   Nosh Hasan: ¶¶ 18, 24 and 26;

(e)   Mike Tones: ¶¶ 17, 23, 25 and 27;

(f)   Ganges:   ¶¶ 24 and 28

(g)   Amin Haq: ¶ 28;

(h)   Beem Khemaney: ¶ 31

## Georgia RICO Against All Defendants

50.

Quastar incorporates by reference the allegations set forth in Paragraphs 1-43, 48 as if fully set forth *verbatim*, herein.

51.

On at least two separate occasions, as presented in the instant case and shown in the fraudulent misrepresentations above and in the Dependable Case, Defendants have conspired in an enterprise and conducted a pattern of racketeering activity to obtain the property of others through deceitful means and artful practice with the intention of depriving those parties of such property in violation of O.C.G.A. § 16-8-3.

52.

Defendants have engaged in an enterprise to acquire personal property (money) through a pattern and practice of racketeering activity in violation of O.C.G.A. § 16-14-4.

53.

Through Defendants' misrepresentations to Quastar by telephone and emial detailed in this Complaint, Defendants have committed criminal acts of wire fraud pursuant to 18 U.S.C.§ 1343 by obtaining Quastar's property by means of fraud, fraudulent pretenses, promises and representations across interstate communication lines.

54.

Through Defendants' misrepresentations to Quastar by telephone and email detailed in this Complaint and causing or

inducing the transportation of stolen computer equipment to be transported across state lines into Canada, Defendants have committed criminal acts of transportation of stolen goods pursuant to 18 U.S.C. § 2314.

55.

Through Defendants' misrepresentations to Quastar by telephone and email detailed in this Complaint to obtain control and custody of the assets controlled by First American Bank of Illinois, namely the letter of credit at issue in this case, by means of fraud or fraudulent promises, Defendants have committed criminal acts of bank fraud pursuant to 18 U.S.C. § 1344.

56.

Quastar has been injured as a result of Defendant's actions and is entitled to recover money damages from him pursuant to O.C.G.A. § 16-14-6(c).

**Unjust Enrichment Against Defendants Ashford Finance, Carrefour, Corporate Funding and Ganges**

57.

Quastar incorporates by reference the allegations set forth in Paragraphs 1-43, 48 as if fully set forth *verbatim*, herein.

58.

Defendants Ashford Finance, Carrefour, Corporate Funding and Ganges falsely procured the computer equipment and/or monetary benefits from Quastar and the transaction without paying Quastar for such computer equipment or returning said equipment.

59.

Defendants Ashford Finance, Carrefour, Corporate Funding and Ganges have been unjustly enriched.

**Breach of Contract the Sale of Goods Against Defendants Carrefour, Corporate Funding and Ganges**

60.

Quastar incorporates by reference the allegations set forth in Paragraphs 1-43, 48 as if fully set forth *verbatim*, herein.

61.

Quastar and the Defendants Carrefour, Corporate Funding and Ganges entered into a contract for the sale of goods. In conformity therewith, Quastar shipped computer equipment to Carrefour and Corporate Funding Partners.

62.

The Letter of Credit that listed Quastar as beneficiary was dishonored and Quastar was not paid for the equipment nor was the equipment returned to Quastar.  As a result, Carrefour, Corporate Funding and Ganges are liable for the agreed upon price of the computer equipment.

### Punitive Damages

63.

Quastar incorporates by reference the allegations set forth in Paragraphs 1-43,48 as if fully set forth *verbatim*, herein.

64.

The actions of the Defendants, as set forth above, show willful misconduct, wantonness and that entire want of care which raises the presumption of a conscious indifference to the consequences of his actions.   Accordingly, Quastar seeks punitive damages pursuant to O.C.G.A. § 51-12-5.1.

### Treble Damages, Attorney's Fees and Expenses of Litigation

65.

Quastar incorporates by reference the allegations set forth in Paragraphs 1-44,49 as if fully set forth *verbatim*, herein.

66.

The actions of the Defendants, as set forth above, show a violation of O.C.G.A. § 16-14-1, *et seq.*, the "Georgia RICO Act." Accordingly, Quastar seeks recovery of three times its actual damages, its attorney's fees, *and* costs of investigation and litigation pursuant to O.C.G.A. § 16-14-6(c).

**WHEREFORE**, Plaintiff demands:

A.   That Civil Process issue as provided by law;

B.   That it be awarded compensatory damages as provided by law;

C.   That it be awarded expenses of litigation, attorney's fees, treble damages, *and* punitive damages as provided by law;

D.   A Trial by Jury;

E.   That it have such other additional relief as the Court may consider equitable and/or appropriate given the circumstances of this case.

CERTIFICATION OF FONT TYPE AND SIZE

Undersigned counsel hereby certifies that Plaintiff's FIRST AMENDED COMPLAINT has been prepared with Courier New 12-Point Font, as approved in LR 5.1.

Respectfully submitted this 5th day of July, 2011.

GEORGIA BUSINESS LAW GROUP, LLC

_____
By Greg Cline

Georgia State Bar No. 170410
Telephone: (770) 670-6203
Facsimile: (770) 670-6213
bgcline@gabusinesslawgroup.com
2 Ravinia Drive
Suite 650
Atlanta, GA 30346
Attorney for Plaintiff The DeLoach Group, Inc. d/b/a
Quastar Computer International

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 5th day of July, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record by transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

B. Greg Cline
Georgia State Bar No. 170410
*Attorney for Plaintiff The DeLoach Group, Inc.*